[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 15-12410
Non-Argument Calendar
_____

D.C. Docket No. 2:13-cv-00191-WCO

DA REALTY HOLDINGS, LLC,
EASTERN MANAGEMENT & FINANCIAL, LLC,

Plaintiffs-Appellees,

versus

TENNESSEE LAND CONSULTANTS, LLC,
SCOTT M. BORUFF,

Defendants-Appellants.

_____

Appeal from the United States District Court
for the Northern District of Georgia
_____

(November 17, 2015)

Before MARTIN, ROSENBAUM, and ANDERSON, Circuit Judges.

PER CURIAM:

This is an action by Plaintiffs-Appellees DA Realty Holdings, LLC, and Eastern Management & Financial, LLC, (collectively, "Plaintiffs") against Defendants-Appellants Tennessee Land Consultants, LLC, and Scott Boruff (collectively, "Defendants") to enforce a guaranty following a failed real estate venture in Forsyth County, Georgia. The district court granted summary judgment to Plaintiffs. On appeal, Defendants argue that the court improperly resolved factual issues in determining that the guaranty was enforceable and relied on inadmissible evidence to determine damages. After careful review, we affirm.

## I.

The parties are both members of Hamby Road, LLC, an Alaska limited liability company created to acquire and develop real estate in Forsyth County, Georgia. In accordance with the Operating Agreement, Plaintiffs advanced a total of $891.815.54 to Hamby Road for the acquisition and development of the real estate, and obtained a total 30% interest in the company. For their part, Defendants did not advance any capital, but they guaranteed the repayment of 50% of the Plaintiffs' advance and obtained a 50% ownership interest in Hamby Road.[1]

At issue in this appeal are the requirements of the guaranty obligation in the Operating Agreement, executed on December 7, 2007, which states in pertinent part as follows:

---

[1] The remaining 20% went to a member and guarantor not involved in the present dispute.

2

> [Defendants] . . . hereby absolutely and unconditionally, jointly and severally, guaranty the repayment [of the funds advanced] . . . no later than the first to occur of (i) three years after the real estate owned by [Hamby Road] has been fully constructed and developed or (ii) five years after the date of this Operating Agreement. Notwithstanding the foregoing, if [Plaintiffs] require[] payment from the Guarantors pursuant to their guaranty hereunder, the Guarantors shall be permitted to obtain third party financing for [Hamby Road] secured by the real estate owned by [Hamby Road] in order to reduce or eliminate [the advance from Plaintiffs], and the Guarantors shall be responsible for any balance.

Under this provision, in other words, Plaintiffs cannot collect on the guaranty until a certain amount of time has passed (either three years after the property was fully developed or five years after the date of the Operating Agreement, whichever is earlier). There is no dispute that the real estate has not been developed. So, Plaintiffs' right to seek reimbursement from Defendants was not triggered until December 7, 2012.

Then, once Plaintiffs "require[] payment" from the Defendants pursuant to the guaranty, Defendants "shall be permitted to obtain third party financing" for Hamby Road to reduce the extent of their liability. In March 2013, Plaintiffs requested reimbursement of the advance from Defendants under the guaranty. Then, in August 2013, Plaintiffs filed suit against Defendants to enforce the guaranty. Defendants have not been able to obtain third-party financing.

3

In denying Defendants' motion to dismiss the complaint, the district court found that the third-party financing clause was a "condition precedent" to Defendants' obligation to perform under the guaranty. *See* Restatement (Second) of Contracts § 224 (1981) ("A condition is an event, not certain to occur, which must occur, unless its non-occurrence is excused, before performance under a contract becomes due."). The court found that "the contract's plain language contemplates that [D]efendants' guaranty is not enforceable until after [D]efendants were provided the opportunity to obtain third-party financing." And because the language of the guaranty did not identify a period of time within which Defendants "shall be permitted to obtain third party financing," the court imputed a "reasonable time" limitation. The parties do not dispute that the guaranty is conditional, so we assume but do not decide that the court's construction of the third-party financing clause was correct and that a condition was intended by the parties.

At summary judgment, Defendants submitted an expert report concluding that third-party financing as envisioned by the guaranty provision was not available from late 2012 through the date of the report in October 2014. Based on that report, Defendants argued that they had no obligation to pay under the guaranty because, due to the lack of viable financing, they had no reasonable opportunity to obtain third-party financing.

4

The district court granted summary judgment in favor of Plaintiffs. The court concluded that the guaranty was enforceable because Defendants had a reasonable time to obtain financing as a matter of law. In support of this determination, the court cited the five-month period between March 2013, when Plaintiffs requested payment, and August 2013, when Plaintiffs filed suit, in addition to the "lack of evidence of any pre-financing due diligence and strong evidence that it would be financially inadvisable for defendants to accept financing on the terms they would be able to receive."

Regarding damages, the district court determined that Plaintiffs offered "minimal—but adequate—evidence" showing that Defendants owed Plaintiffs $677,939.02, representing 50% of the total principal of the advance (or $445,907.77) plus interest as specified in the Operating Agreement. The court based the damages on handwritten entries in a ledger prepared by a manager of DA Realty, one of the Plaintiffs, which showed all of the advances Plaintiffs made to Hamby Road. Over Defendants' challenge that the ledger was inadmissible hearsay, the court found that the ledger was admissible because the manager, through a supporting affidavit, established that the ledger qualified under the business-records exception to the rule against hearsay. *See* Fed. R. Evid. 806(3). Defendants now bring this appeal.

**II.**

We review the district court's grant of summary judgment *de novo*, viewing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1268 (11th Cir. 2014). Summary judgment should be granted if the moving party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

## III.

## A.

Under Alaska law, "the primary underlying purpose of the law of contracts is the attempted realization of reasonable expectations that have been induced by the making of a promise." *Norton v. Herron*, 677 P.2d 877, 879-80 (Alaska 1984) (internal quotation marks omitted).[2] In order to give legal effect to these reasonable expectations, courts must first look to the contract itself and also to any extrinsic evidence of the parties' intent at the time the contract was made. *Id.* Where, as here, there is no extrinsic evidence in dispute, the interpretation of a contract is treated as a question of law. *Id.*

---

[2] Georgia law governs this diversity case, *Wammock v. Celotex Corp.*, 835 F.2d 818, 820 (11th Cir. 1988), and, under Georgia law, "the law of the jurisdiction chosen by parties to a contract to govern their contractual rights will be enforced unless application of the chosen law would be contrary to the public policy or prejudicial to the interests of this state," *CS-Lakeview at Gwinnett v. Simon Prop. Grp., Inc.*, 659 S.E.2d 359, 428 (Ga. 2008). The Operating Agreement provides, and the parties agree, that Alaska law governs construction of the contract. Doc. 24–1, § 13.03. Therefore, we apply Alaska law.

When no time is specified for the performance of an action under a contract, "a reasonable time is implied, to be determined upon consideration of the subject matter of the contract, what was contemplated at the time the contact was made, and other surrounding circumstances." *Hall v. Add-Ventures, Ltd.*, 695 P.2d 1081, 1089 (Alaska 1985); *see also Commercial Recycling Ctr., Ltd. V. Hobbs Indus., Inc.*, 228 P.3d 93, 102 & n.27 (Alaska 2010).  Under Alaska law, what constitutes a "reasonable time" ordinarily is a question of fact.  *Id.*  Nonetheless, where the material facts are undisputed and do not support a reasonable inference in favor of the non-movant, summary judgment may properly be granted as a matter of law.  *Cf. Armco Steel Corp. v. Isaacson Structural Steel Co.*, 611 P.2d 507, 514 (Alaska 1980) ("Although the reasonableness of notice is generally a question of fact, where there is undisputed evidence of an unduly long delay in giving notice, a court may find that the notice was unreasonable as a matter of law.").

Defendants argue that the district court improperly granted summary judgment because a jury could conclude that Defendants did not have a reasonable time to obtain third-party financing.  A reasonable time under the circumstances, Defendants argue, means a reasonable opportunity to obtain financing, but the expert's report makes clear that "it was impossible and impracticable" for Hamby Road to obtain financing at the time Plaintiffs demanded payment and through October 2014.  Thus, Defendants claim, "a jury could reasonably conclude that

7

Defendants have not yet had a sufficient opportunity to obtain third-party financing, and thus that Defendants have not yet had a reasonable time to obtain that financing."

We conclude that the district court properly granted summary judgment to Plaintiffs on Defendants' liability under the guaranty.  There is no evidence that Defendants were not "permitted to obtain third party financing" to reduce or eliminate their liability.[3]  Instead, the Defendants' expert report demonstrates that third-party financing, as envisioned by the guaranty provision, simply was unavailable at the time Plaintiffs demanded payment in March 2013 and at least through October 2014.  Defendants make no claim that such financing is available even today.  In short, the undisputed evidence shows that Defendants were permitted and had an opportunity to obtain third-party financing but such financing simply was not available.

Defendants' contention that a reasonable jury could find that they had not yet had a reasonable opportunity to obtain third-party financing relies on an interpretation of the contract that we find to be unreasonable and inconsistent with the contract as a whole.  Under the Operating Agreement, Plaintiffs advanced the funds used by Hamby Road for the acquisition and development of the real estate

---

[3] The expert report explains that the third-party financing clause allows or "permits" Defendants to take an action—using Hamby Road real estate as collateral to obtain financing—that they otherwise could not do without the specific consent of Plaintiffs.

8

at issue, with the clear expectation that such funds (excluding their *pro rata* share) would be repaid whether the real estate was developed or not.   Further, the agreement contemplates that third-party financing may not be available, or at the very least may not fully cover the advance, because the guaranty provision plainly obligates Defendants to be "responsible for any balance."  "[A]ny balance" could mean the entire amount, nothing, or something in between.   These provisions contemplate that Plaintiffs' assumption of risk did not extend to what was, essentially, Defendants' *pro rata* share of the advance.

Defendants' construction of the contract—that Plaintiffs must wait until third-party financing is available to Defendants—unreasonably narrows Plaintiffs' protection under the guaranty.  *See, e.g.*, Defendants Initial Br. at 15 ("[E]ven if the District Court's construction of [the expert's] opinion that the condition precedent can never be satisfied were correct, Plaintiffs would still not be entitled to summary judgment.  In fact, they would forever be barred from recovering on the guaranty.").   Defendants' construction could effectively allow Defendants to escape liability under the guaranty in the event that the real-estate venture was a failure, which, while certainly preferable for Defendants, is inconsistent with the plain terms of the agreement, as explained above.  Nothing about the agreement persuades us that the parties intended to agree to such an open-ended, possibly

9

infinite, limitation on Plaintiffs' ability to be reimbursed for the funds they advanced to Hamby Road.[4]

In these circumstances, we cannot say that the district court erred in granting summary judgment on Defendants' liability under the guaranty.

**B.**

Defendants also contend that the district court erred in granting summary judgment on the issue of damages because Plaintiffs failed to submit sufficient evidence of their damages to meet their initial burden at summary judgment. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 607-08 (11th Cir. 1991) ("The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial."). They contend that the handwritten ledger is only a summary of documents, *see* Fed. R. Evid. 1006, and that Plaintiffs have not produced, or established the admissibility of, the underlying documents used to create the summary.

The handwritten ledger is not a "summary" as contemplated by Rule 1006, and the district court did not find it admissible as such. "Rule 1006 contemplates the admission of a summary, prepared for trial, as *secondary* evidence" of the materials used to create it. *United States v. Draiman*, 784 F.2d 248, 256 n.6 (7th

---

[4] We place no importance on the supposed "lack of evidence of any pre-financing due diligence," as the district court did, but we also note that Defendants did not put forth any evidence detailing the steps they took to obtain third-party financing.

10

Cir. 1986) (emphasis in original); *see* Fed. R. Evid. 1006 ("The proponent may use a summary, chart, or calculation to prove the content of voluminous writings, recordings, or photographs that cannot be conveniently examined in court."). The admissibility of the summary therefore depends on the admissibility of the underlying documents summarized. *See George Russell Curtis, Sr. Living Tr. v. Perkins (In re Int'l Mgmt. Assocs., LLC)*, 781 F.3d 1262, 1266 (11th Cir. 2015) ("[I]t is necessary to establish that the underlying documents would have been admissible if the proponent had sought their admission.").

Here, the court found that the ledger, based on a supporting affidavit from one of the Plaintiffs' managers, was admissible under the business-records exception to the hearsay rule. *See* Fed. R. Evid. 803(6). As a business record, the ledger would be admissible in and of itself. Rule 803(6) contains no requirement that the entries on a business record—the "record of an act, event, condition, opinion, or diagnosis"—must be supported by underlying documents in order for the business record to be admissible. *See id.*; *see also Draiman*, 784 F.2d at 256 n.6 ("The entries on a business record, however, are considered the original entries, and therefore the business record is admissible without regard to the availability of the underlying documents."). Defendants do not contest the ledger's admissibility as a business record, so they have abandoned any claim of error on this point. *See Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 680 (11th Cir. 2014) ("When

11

an appellant fails to challenge properly on appeal one of the grounds on which the district court based its judgment, he is deemed to have abandoned any challenge of that ground, and it follows that the judgment is due to be affirmed."). Consequently, we affirm the district court on the issue of damages.

## IV.

In sum, we affirm the district court's entry of summary judgment in favor of Plaintiffs on the guaranty.

**AFFIRMED.**